## FAUST, Respondent, v. KOERS, Appellant.

St. Louis Court of Appeals, March 21, 1905.

1. **SALES: Warranty.** Where one purchasing a horse asked the owner if the animal was "absolutely sound" and the owner answered, "In every particular," and the purchaser then said, "If that is the case, I will take your word for it and don't care about any receipt," this amounted to a warranty of the soundness of the horse.

2. ————: **Rescission: Waiver.** Where one, who has been defrauded in the purchase of personal property, after a tender back and the refusal of the vendor to rescind, takes and uses the property as his own, he will be deemed to have waived all right derived from his tender.

3. ——: ——: ——. The purchaser of a horse, with a warranty of its soundness, on finding it unsound tendered it back and the tender was refused by the vendor. The purchaser afterwards fed and cared for it and drove it occasionally for the purpose of giving it exercise. The finding of the trial court that the purchaser did not waive his right to rescind was justified.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Stern & Haberman* for appellant.

(1) Respondent sued upon a warranty. No warranty was proved. Galbreath v. Carnes, 91 Mo. App. 514; Lindsay v. Davis, 30 Mo. 410; Peers v. Davis, 29 Mo. 189.

(2) A warranty does not cover visible defects. Thompson v. Botts, 8 Mo. 713.

(3) By acts of dominion after the attempted rescission respondent lost his right to recover. McColloch v. Scott, 52 Ky. 172, 56 Amer. Dec. 561; Benjamin on Sales, 6th Ed., sec. 703; Glass Co. v. Friedlander, 84 Wis. 53; 24 Amer. & Eng. Ency. of Law, 2nd Ed., 647; O'Donnell v. Farrar, 45 N. E. (Ill.) 283; Aultman v. Theirer, 34 Ia. 272; Churchill v. Price, 44 Wis. 540; Pintard v. Martin, S. & M. 126; Downer v. Smith, 32 Vt. 1; Horn v. Buck, 48 Md. 358; Leavenworth v. Packer, 52 Barb. (N. Y.) 132, at 135.

*S. T. G. Smith* for respondent.

STATEMENT.

On April 11, 1904, plaintiff bought a horse of defendant for which he paid him one hundred and fifty dollars cash. In his petition plaintiff alleges that defendant warranted the horse to be sound, whereas, in

fact, he was unsound, and on discovering his unsoundness he offered to rescind the sale by tendering the horse back to the defendant and demanding the return of the purchase-price; that defendant refused to recind the sale and receive the horse and pay back the purchase money.

The suit is to recover the purchase money and the expense of keeping the horse after the tender was made.

Plaintiff testified that he did not make a close examination of the horse before purchasing him; that he knew the defendant well and asked him if the horse was "absolutely sound" and defendant replied that he was "in every particular," and that he (plaintiff) replied, "If that is the case I will take your word for it and don't care about any receipt," and handed the one hundred and fifty dollars over to defendant and led the horse off to a livery stable. Plaintiff's evidence tends to show that within eight or ten days after he got the horse he discovered that he had curb (described as an incurable disease) and thrush (described as a curable one). His evidence tends to show that curb could not develop in less than three or four months, and that as soon as he ascertained the horse was unsound he offered to rescind the contract by tendering the horse back to defendant and demanding of him the purchase price. This was refused by the defendant. After defendant refused to take the horse back, plaintiff took him to a livery stable and kept him there, paying for his keep until such time as he could turn him on pasture. During the period he kept the horse in the livery stable, plaintiff testified that he drove him occasionally for the express purpose of exercising him to prevent him becoming stiff by standing in the stable. Defendant's evidence tends to show that the horse was sound at the time he sold him to the plaintiff, and that after plaintiff tendered the horse back to defendant, plaintiff used the horse. The only use, however, defendant showed was that on one occasion plaintiff took a young lady driving out to Forest Park and

Faust v. Koers.

back. Plaintiff's testimony is that on this occasion he drove the horse expressly for the purpose of giving him exercise, and that the young lady's presence in the buggy was a mere accident, not a prearranged affair.

In respect to the warranty, the defendant testified that he did not warrant the horse; that the horse was in a lot and was looked over by the plaintiff several times before he bought him, and when the plaintiff asked him if the horse was sound, his reply was, "Yes, as far as I know." The evidence shows that curb is a disease not readily detected by an examination and that one unfamiliar with horses, one not an expert, would not be likely to detect the presence of curb by an examination. Plaintiff's evidence is that he is not an expert and that he did not know what ailed the horse until he had him examined by a veterinary surgeon.

The issues were submitted to the court sitting as a jury, who found for the plaintiff and assessed his damages at one hundred and seventy-five dollars. Defendant appealed.

BLAND, P. J. (after stating the facts).—The only declaration of law asked was by defendant to the effect that under the law and the evidence plaintiff could not recover. The refusal of this declaration of law is the only error assigned. Defendant contends that it should have been given for two reasons: first, that the evidence is not sufficient to show that defendant warranted the horse to be sound and, second, that by acts of dominion exercised by plaintiff over the horse after the tender and offer to rescind, he lost his right to recover. In considering the question as to whether or not there was evidence sufficient to authorize the trier of the facts to find that the defendant warranted the horse to be sound, the evidence offered by the defendant must be left out of view and the evidence offered by plaintiff should be given full credence and the fullest probative force that can be ascribed to it. The language of the plaintiff is, "I

asked him (defendant) if the horse was 'absolutely sound.' He (defendant) said he was 'in every particular,' and I said, 'If that is the case, I will take your word for it and I don't care about any receipt.' " We think the fair inference to be derived from this evidence is that the representation of the soundness of the horse made by the defendant was made with the intent that plaintiff should rely upon it, and plaintiff's evidence shows that he did rely upon it; if this is so, then it amounted to a warranty of the soundness of the horse. Galbreath v. Carnes, 91 Mo. App. 512; Anthony v. Potts, 63 Mo. App. 517; Carter v. Black, 46 Mo. 384.

The defense, that after the attempted rescission plaintiff exercised such dominion over the horse as to preclude his right to recover, was an affirmative one and it devolved upon the defendant to prove it by a preponderance of the evidence. There it no evidence whatever that plaintiff used the horse in his business. All the evidence there is on this point was elicited from plaintiff and all that it shows is that he drove the horse at intervals, while he was being kept in the livery stable, for the purpose of giving him exercise to prevent him becoming stiff from standing, and that on one occasion he took a young lady for a drive to Forest Park and back; this incident he characterized as an accident. We do not think this evidence conclusively shows that plaintiff used the horse for himself or that his acts of dominion over, and use of, the horse were for any purpose other than for the good of the horse and were for the sole purpose of preventing him becoming stiff from continuous standing. It is a well-settled rule of law that a vendee of personal property, who has been defrauded in a sale by the vendor, may tender back the property and rescind the contract, but if the vendor refuses to rescind and the vendee thereafter takes and uses the property as his own, he will be deemed to have waived all right derived from his tender. McCullock v. Scott, 13 B. Mon. (Ky.) 172; Glass Co. v. Friedlander, 84 Wis. 53. But the rule is not

so unreasonable as to require the vendee to wholly abandon the property when its very life, as in the case of a domestic animal, requires that it be fed and cared for, and if the vendee exercises no other dominion over the animal than to feed and care for it, he does not thereby waive his right to a rescission of the contract; such acts are for the benefit of the vendor and he should not be allowed to take advantage of them. We think the evidence is sufficient to authorize the verdict as found by the learned circuit judge and affirm the judgment.

All concur.