AARON FERER, Doing Business as OMAHA METAL AND RUBBER COMPANY, Respondent, v. J. H. HANEY & CO., Appellants.

St. Louis Court of Appeals. Opinion Filed May 8, 1923.

1. **SALES: Merchandise Not Ordered Included in Shipment: Action to Recover Overcharges: Evidence: Seller's Liability.** In an action on account of overcharges paid to defendant, plaintiff having purchased a certain shipment of rubber, including tires, inner tubes,

etc., and paid the draft therefor, and afterwards when the shipment arrived alleges that it contained articles of merchandise which he did not purchase, evidence reviewed and *held* sufficient to support a judgment for plaintiff.

2. ———: ———: ———: **Buyer May Accept Goods Ordered and Reject Remainder.** Where the seller has knowingly included in his shipment more goods or different goods than the buyer ordered, the buyer may accept that which he ordered and reject the remainder.

3. ———: ———: ———: **Buyer Notifying Seller of Receipt of Goods Not Ordered: Extent of Liability.** Where a shipment of merchandise included goods which the buyer did not order, and he immediately notifies the seller of that fact, and that he holds goods subject to seller's order, buyer has done all the law required and is not liable for the surplus goods.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Franklin Ferriss,* Judge.

AFFIRMED.

*W. M. Kinsey* for appellants.

*Louis Mayer, Robert Burnett* and *Irl B. Rosenblum* for respondent.

(1) Appellant's appeal should be dismissed for failure to comply with rule 18 of the rules of practice in the St. Louis Court of Appeals, providing that all briefs shall be printed and shall contain separate and apart from the argument or discussion of authorities a statement in numerical order of the points relied on, together with the citation of authorities appropriate under each point, and providing further that the brief filed by apellant shall distinctly and separately allege the errors committed by the trial court, and that no reference will be permitted at the argument to the errors not thus specified. Rule 21 of the Rules of Practice of the St. Louis Court of Appeals. (2) Since appellant made no request of the trial court for findings of fact, conclusions of law, or declarations of law, the brief memorandum opinion of

the trial court does not contain a finding of fact or conclusion of law in conformity with section 1402, R. S. 1919, and accordingly said finding is to be construed only as a general finding in favor of the plaintiff and against the defendants. Therefore, said memorandum opinion cannot be reviewed on appeal, and, if there is any evidence whatever in the record which will sustain the judgment for the plaintiff in the trial court, that judgment must be affirmed by the appellate court. Kansas City v. Boyer, 202 S. W. 1086; Bank of Catawissa v. Walters, 209 S. W. 967; Thompson v. Wendling, 219 S. W. 671; Meridian Lumber Co. v. Lowry Lbr. Co., 229 S. W. 267; Crowell-Spencer Lumber Co. v. Hill et al., 242 S. W. 427. (3) When a seller ships to a buyer merchandise not contracted for, in addition to merchandise agreed to be purchased in the contract, the buyer may retain the merchandise purchased and reject the merchandise not ordered. Famechon v. Devore, 184 Mo. App. 577; Ruhl Clothing Co. v. Singleton, 161 Mo. App. 366; Williston on Sales, par. 472.

NIPPER, C.—Plaintiff sued defendant in a justice of the peace court for $87.64, on account of overcharges paid to defendant. Plaintiff, whose place of business is Omaha, Nebraska, purchased from defendants, whose place of business is Hastings, Nebraska, a certain shipment of rubber, including tires, inner tubes, etc., and when a draft therefor arrived plaintiff paid the same, which amounted to $123.55. When the shipment arrived, plaintiff alleges that it contained articles of merchandise which he did not purchase, and it is for the purchase price of these articles and the freight thereon that plaintiff seeks to recover.

It is necessary, in order to properly understand this case, and to determine the issues presented, that we copy the correspondence as set out in the abstract, which is as follows:

"On July 23, 1919 defendants whose place of business is located at Hastings, Nebraska, wrote to the plain-

tiff, whose place of business was located at Omaha, Nebraska, as follows:

" 'We also have scrap rubber which is the scrap from new stocks from hose that is used on tire pumps and we also have quite a bit of shavings and tire casings, also tire casings and inner tubes which we would like to have your best price you can offer.

" 'As to samples of the rubber scrap and other material it would hardly be possible to send this by mail and if the writer can in any way see his way clear in making Omaha in the future will bring samples of this material along. This stuff accumulates the year round and we have thousands of pounds in a year's time. Kindly let us hear from you in regard to prices.'

"On July 29, 1919, plaintiff replied as follows:

" 'We received the samples of the tires and inner tubes. We can pay you for the tires $3.25 per cwt., and for the inner tubes $7.50 per cwt. Prices based on freight terms as above. Regarding the sample of the new rubber hose. At present we are unable to make you a quotation. Kindly take up with us on this material later on.'

"On July 31, 1919, defendants wrote plaintiff as follows:

" 'In regard to tires and tubes. We have an offer of $3.25 per cwt. on the tire skivings, that is the trimmings off the side of auto casings. Is $3.25 the best price you can give us for auto casings? The last price we have on inner tubes was 8 cents f. o. b. Hastings. We have a large quantity of this case skivings on hand and we have quite a number of casings. If we can get together on this price you might as well handle our material as let some of your competitors handle it as you seem to be pretty fair to deal with and if we can continue on the right prices you can buy an enormous amount of scrap material from us in a year's time.'

"On August 2, 1919, plaintiff wrote to defendants as follows:

" 'Regarding the rubber, we quoted you our highest prices in our last letter but in order to do business with

you, we will pay you these prices on the basis f. o. b. Hastings, and we will assume all freight charges. This offer is made you subject to your immediate acceptance and shipment.'

"On August 8, 1919, defendants wrote plaintiff as follows:

" 'What is your best price on scrap paper f. o. b. Hastings—As soon as we can get the rubber casing skivings and casings baled together we will make you shipment. We are advised that the white casings are worth a little bit more money than the black. Have you any quotation to offer us on the sample of the rubber hose that we sent you?'

"On August 11, 1919, plaintiff wrote defendant as follows:

" 'In answer to yours of the 8th inst., we note you are making us shipment of the rubber. Please hurry this shipment forward, as the market is not right on this grade of material and as we are making shipment, we would like to include this material.

" 'We cannot make you a price on the hose at present, for as stated above, the rubber market is not right. We may be able to quote you later on.'

"On August 12, 1919, defendants wrote plaintiff as follows:

" 'Your letter of August 11th in regard to the shipment of rubber we will send this forward as soon as possible, as we have been short on help and suffered considerable in some of our departments in handling our materials. The writer will take it up this morning with the party handling this rubber so it can be shipped as soon as possible.

" 'As soon as you can make us a price on the hose please notify us so that we can make shipment if price is right.'

"On August 20, 1919, plaintiff wrote defendant as follows:

" 'We are today in receipt of your shipment and same consists of 1280 pounds auto casings, 65 pounds

tubes and 2335 pounds of fabric rims skinned off the rubber. We are crediting you with the casings at $3.25 as per agreement. The tubes we are passing at invoice weight. Regarding the other material this material is of practically no value as it is nothing but rims from the tires with the rubber skinned off. We are holding this item to one side and await your disposition on same. You will kindly furnish us with disposition by return mail.

" 'We are enclosing herewith statement showing amount due us and would ask that you favor us with your check to cover as well as with the disposition.' "

The next day, or on August 21st, defendant answered the above letter of plaintiff, stating that a sample of the "skivings" had been sent plaintiff and he had made them an offer of $3.25 per hundred; and also stating that if it had known that plaintiff would not accept these "case trimmings," no shipment would have been made. The letter also asked plaintiff to reconsider this matter and see if he could not make use of these "trimmings." On the next day, or August 22nd, plaintiff wrote defendant, advising that the offer which plaintiff made was only on "auto casings" and "inner tubes." Plaintiff also advised defendant in this letter that if it wanted the whole shipment sent back he would do so, and not charge defendant with the expense of taking the same from the depot. Other correspondence followed, but plaintiff refused to accept the skivings, and defendant refused to pay the amount of plaintiff's demand.

Plaintiff testified that he never made defendant any quotation for the purchase of the material involved in this suit other than that appearing by letter; that defendant sent him samples of tires, tube hose, and some material it called "skivings," after which he wrote defendant his letter dated September 7th; that the shipment he received consisted of "inner tubes," tires, and some material from old casings which had no rubber on it that defendant called "skivings."

G. J. Olson, witness for defendant, testified that he was traffic manager of defendant company; that he sent

14—211 M. A.

plaintiff samples of the rubber, and that the samples he sent plaintiff consisted of a piece of "rubber skiving," "rubber tubes," and a piece of "rubber hose;" that tire skivings are trimmings off of casings.

There were no declarations of law asked or given. The court rendered judgment for plaintiff, and defendant appeals.

The defendant urges as ground for reversal that the objection of plaintiff was to the quality of the goods, and therefore he could not affirm the contract in part and disaffirm it in part. A careful reading and analysis of the correspondence between these parties, we think, reveals the fact that there was sufficient evidence to support a judgment for the plaintiff, because there is nothing in the correspondence to show that plaintiff ordered "skivings." It may be that defendant so understood the contract, but plaintiff quoted no price on the "skivings," nor did he agree to buy such. Where the seller has knowingly included in his shipment more goods, or different goods than the buyer ordered, the buyer may accept that which he ordered, and reject the remainder. [5 Elliott on Contracts, sec. 5049.]

There is no contention here that plaintiff did not make his rejection promptly, and if the shipment included goods which plaintiff did not order, and plaintiff immediately notified defendant of that fact, and that he held the goods subject to its order, plaintiff had done all the law required, and was not liable for the surplus goods. [Clothing Co. v. Singleton, 161 Mo. App. 366, 143 S. W. 529; Powers v. Dodgson, 194 Mich. 133.]

As we understand it, plaintiff is not seeking to recover because of the inferior quality of the "skivings," but because he did not buy or offer to buy any such article; and there is substantial evidence to sustain the finding of the trial court upon this question. The buyer here is not undertaking to repudiate the contract he entered into with defendant. He is simply rejecting material shipped him for which he contends he did not contract, and we think the evidence supports his contention. There-

fore, the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.